FILED'09 OCT 19 15:29USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN DEAN ACHTEMEIER,

        Petitioner,

    v.

BRIAN BELLEQUE,

        Respondent.

Civil No. 08-6389-MO

OPINION AND ORDER

    Erin K. Olson
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    John R. Kroger
    Attorney General
    Jacqueline Sadker
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

///

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying state court convictions. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## BACKGROUND

At approximately midnight on July 27, 2003, a group of people including petitioner were making noise outside the apartment occupied by the victim in this case, Marco Gonzalez. Gonzalez asked the group to be quiet and when petitioner refused, Gonzalez informed the group that he intended to call the police. Respondent's Exhibit 103, p. 18. When Gonzalez turned around to go back into his apartment to call the authorities, petitioner hit him on the back of his head with a Maglite flashlight. *Id* at 19. Gonzalez testified at trial that petitioner repeatedly struck him in the head with the flashlight, "maybe 20 times that I remember." *Id* at 21. He also remembered petitioner's friend say, "'Heh, you're killing him,' and [the friend] attempted to pull the [petitioner] off me, and he was pulling him away when he like -- I think he hit me a couple more times, and then they went away." *Id*.

Petitioner sustained multiple contusions and lacerations to his head, including a four-inch laceration which extended to the bone of his skull. Respondent's Exhibit 141, p. 5. He also suffered cuts inside of his mouth and loose teeth. *Id*. At the

2 - OPINION AND ORDER

time of trial, Gonzalez continued to suffer from "just a very strange sensation, it's like a tightness on my scalp. . . ." Respondent's Exhibit 103, p. 22. The treating physician on duty at the emergency room, Dr. Dale, described petitioner's injuries as "really severe." *Id* at 39. Dr. Dale further testified that the injuries were "some of the worst lacerations that I've taken care of in my time in the ER," a substantial statement given that he had been an emergency room physician "[f]or going on 24 years." *Id* at 38.

As a result of the attack, petitioner was charged with Attempted Murder, Assault in the First Degree, Resisting Arrest, and two counts of Assault in the Second Degree. Respondent's Exhibit 102. Petitioner proceeded to a jury trial where the jury acquitted him of Attempted Murder and Resisting Arrest, but found him guilty of the three counts of Assault. Respondent's Exhibit 101. As a result, the trial court sentenced petitioner to 90 months imprisonment. *Id.*

Petitioner took a direct appeal, but subsequently moved to dismiss it. Respondent's Exhibit 104.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied relief. Respondent's Exhibits 141-142. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme

3 - OPINION AND ORDER

Court denied review. *Achtemeier v. Belleque*, 221 Or. App. 383, 190 P. 3d 495, *rev. denied*, 345 Or. 381, 195 P.3d 911 (2008).

Petitioner filed this federal habeas corpus case on December 1, 2008. In his Petition, he raises two grounds for relief:

1. Petitioner's rights to counsel and due process were violated when counsel failed to conduct a legal and factual investigation into reasonable defenses which could have been presented at trial; and

2. Petitioner's rights to counsel and due process were violated when trial counsel failed to challenge the admission into evidence of highly prejudicial statements attributed to petitioner that were obtained in violation of his Fifth Amendment rights.

Respondent asks the court to deny relief on the Petition on the basis that the state court decisions correctly rejected petitioner's arguments, and those decisions are entitled to deference.[1]

## DISCUSSION

I. **Standard of Review**.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an

---

[1] Although the *pro se* Petition references both ineffective assistance of counsel as well as due process, the claims are argued only on the basis of ineffective assistance of counsel. The court therefore addresses them as such.

4 - OPINION AND ORDER

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

II. **Ground One: Failure to Investigate**.

According to petitioner, counsel rendered ineffective assistance when he failed to investigate and challenge the seriousness of the victim's injuries. He asserts that the injuries

5 - OPINION AND ORDER

were not severe enough to constitute "serious physical injury" under Oregon law, a prerequisite for a finding of guilt for the crime of Assault in the First Degree.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result

6 - OPINION AND ORDER

is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

Under Oregon law, a person is guilty of Assault in the First Degree if the person "intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.185(1). Relevant to the State's theory of the case, "serious physical injury" is defined as "physical injury which creates a substantial risk of death." ORS 161.025(8); Respondent's Exhibit 103, p. 39. Petitioner argues that there was insufficient evidence to support a conviction for Assault in the First Degree because there was no substantial risk of death where the victim never lost consciousness, never suffered any fractures or neurological problems, and was released from the hospital less than four hours after arriving there.

The PCR trial court made numerous findings in this case, including recounting Dr. Dale's testimony regarding the severity of petitioner's injuries, and his testimony that "the object of the Maglite flashlight was capable of causing death and that the victim suffered very severe lacerations, contusions, and injuries to his head. Dr. Dale testified that in his 24 years as an emergency room doctor, these were some of the worst lacerations that he had treated." Respondent's Exhibit 141, p. 5. The PCR trial court concluded that "[a]voiding allowing the victim to repeatedly discuss his injuries and retell his story, as well as avoiding

7 - OPINION AND ORDER

being seen as attacking the victim, was a reasonable trial strategy." *Id* at 5-6.

According to the PCR testimony of trial counsel, he elected not to cross-examine either Gonzalez or Dr. Dale about the extent of Gonzalez's injuries because his strategy focused on self-defense, thus the issue of injury severity was insignificant. Respondent's Exhibit 131, pp. 41-42. He also testified that in his experience, offering an alternate defense regarding the severity of the injuries when attempting to claim self-defense would be very difficult because "[e]ither he was defending himself or he wasn't." *Id* at 40.

Counsel also did not wish to give Dr. Dale the opportunity to reiterate his testimony to the jury that these were the worst lacerations he had seen in his 24 years as an emergency room physician, testimony which was consistent with the medical reports produced. Respondent's Exhibit 131, pp. 41, 43-44. Gonzalez was "uncooperative, to say the least," during the course of counsel's investigation, and he feared that cross-examining him with respect to his injuries would simply allow him to reiterate his direct examination testimony. *Id* at 43.

Courts are required to accord a high degree of deference to an attorney's strategic decisions. *Strickland*, 466 U.S. at 669. Counsel's decision to focus on self-defense to the exclusion of raising a challenge to the severity of the victim's injuries was

8 - OPINION AND ORDER

not unreasonable. Any attempt to show that petitioner did not face serious physical injury would have been difficult given the testimony of Dr. Dale, the fact that several of petitioner's friends witnessed the beating with a heavy Maglite flashlight, and one of the friends voiced aloud his concern that petitioner was killing Gonzalez while the beating continued. Moreover, petitioner had been adamant all along that he acted in self-defense and refused a plea offer by the State which would have led to a 70-month sentence, the same sentence he would have received had counsel been able to successfully argue that the injuries to Gonzalez were not "serious."[2]  Respondent's Exhibit 132, p. 74. Given the substantial evidence that petitioner's attack on Gonzalez was particularly violent, his refusal of a 70-month prison term by way of a plea agreement, and his insistence that he acted in self-defense, counsel cannot be faulted for not challenging the severity of the injuries petitioner suffered.[3]

---

[2] Assault in the Second Degree is appropriate where a defendant causes physical injury using a dangerous weapon which, under the circumstances, is *capable* of causing serious physical injury. ORS 163.174; ORS 161.015. The mandatory minimum sentence for Assault in the Second Degree is 70 months. ORS 137.700.

[3] Petitioner also raises an ineffective assistance of counsel claim based on counsel's alleged failure to move for a judgment of acquittal at the close of the State's case on the basis that the State failed to meet its burden of proof that petitioner inflicted injuries which created a substantial risk of death. Petitioner did not raise this claim in his Petition for Review to the Oregon Supreme Court. Respondent's Exhibit 143. As a result, it is procedurally defaulted. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

9 - OPINION AND ORDER

### III. Ground Two: Suppression Motion.

During the trial, Deputy Hardison testified regarding his investigation of the case, including his discussions with petitioner on the night of the assault. He testified that petitioner became upset when he learned the police were going to arrest him, and "was yelling things like 'Can't a white man defend himself,' walking away from us punching his fists." Respondent's Exhibit 103, p. 46. Deputy Hardison testified that petitioner mentioned this several times. *Id* at 53. Petitioner believes these statements injected a suggestion of racism into the trial, and he faults counsel for not moving to suppress them. According to petitioner, suppression would have been proper because these statements were made to the police while he was in custody, but without the benefit of a *Miranda* warning. The PCR trial court made the following findings with respect to this claim:

> 1. Petitioner failed to prove that trial counsel was ineffective by not filing a motion to suppress his statements to the police.
>
> 2. During the course of the investigation[,] the officers spoke with several people in the Alsea area, including petitioner. The officers spoke to petitioner on three occasions on the night of the assault, each time outside of the house where petitioner was staying. On the third occasion, petitioner admitted his involvement and said that the victim came out and "got in petitioner's face."
>
> 3. Petitioner's statements to the police were made prior to being mirandized and

10 - OPINION AND ORDER

>       during the course of the officers' investigation. Petitioner's statements were made outside, in front of the house where he was staying with friends, and were consistently directed at his need to defend himself from attack by the victim. Uniformly, petitioner's statements, both to the officers, and then again at trial, were that the victim threatened and attacked him first and that his actions were made only in self-defense.
>
> 4.    As such, petitioner's statements to the officers were consistent with his trial presentation and supported his trial theories. His attorney was not constitutionally ineffective for not moving to suppress statements that were consistent with the defendant's theory of the case.
>
> 5.    Petitioner's attorney engaged in reasonable trial strategy by allowing petitioner's statements to the officers to come in unchallenged as the only defense available to petitioner was self-defense. Petitioner failed to prove that he was prejudiced by counsel's decision not to challenge his statements to the officers.

Respondent's Exhibit 141, pp. 3-4.

Where petitioner's statements to authorities were consistent with his theory of self-defense, and trial counsel made a tactical decision not to object to the statements in order to bolster his defense, counsel's performance did not fall below an objective standard of reasonableness. This is especially true in a case such as this were there were no witnesses to the crime who could support petitioner's theory of self-defense, a defense which he adamantly

11 - OPINION AND ORDER

asserted from the time preceding his arrest through his rejection of the State's plea offer and, ultimately, his trial.

Moreover, while a suspect subject to custodial interrogation has a Fifth Amendment right to consult with an attorney, and the police must explain this right prior to questioning, *Miranda v. Arizona*, 384 U.S. 436, 469-473 (1966), these safeguards do not apply outside the context of custodial interrogations. *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). In this case, all of petitioner's encounters with the police occurred on the street, and petitioner voluntarily approached the officers twice believing that they "might want, you know, to ask some questions" and because he "sort of needed to get this off my chest, what actually happened." Respondent's Exhibit 103, pp. 43-46, 65-66. An objective observer of petitioner's interactions with the deputies would not have concluded that petitioner was in custody. As a result, the *Miranda* safeguards were not triggered. *See Stansbury v. California*, 511 U.S. 318, 323 (1994) (*per curiam*) (initial custody determination based on objective circumstances, not the subjective views of the parties involved).

Petitioner nevertheless argues that Deputy Hardison unequivocally testified by deposition during the PCR trial that once petitioner admitted assaulting Gonzalez, he was no longer free to leave. Respondent's Exhibit 114, p. 55. He therefore concludes that *Miranda* warnings were required because he was in custody.

12 - OPINION AND ORDER

Petitioner is incorrect. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). As a result, a motion to suppress was not warranted, thus counsel cannot be faulted for not making one.

For all of the foregoing reasons, the court finds the PCR trial court's decision to be neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is DENIED.

IT IS SO ORDERED.

DATED this 14th day of October, 2009.

                    Michael W. Mosman
                    United States District Judge

13 - OPINION AND ORDER